## MILFORD vs. WILTON.

Where a warning to an individual to leave town, was issued under the act of January 16, 1771, which warning was duly served, and subsequently found in the clerk's office, in a regular file, purporting to contain papers returned within the period required by the statute, *held* that this was *prima facie* evidence of a seasonable return.

Where there is any thing in the memorandum of the clerk, or any such departure from the established practice of the clerk as to render the time of the return doubtful, or other testimony to rebut the *prima facie* evidence of the return having been seasonably made, it is evidence to be weighed by the jury.

Where the clerk has minuted the time of the receipt, this is in all cases conclusive evidence.

ASSUMPSIT for the support of Edward Bragg, a pauper.

The pauper had the settlement of John Bragg, the grandfather, who went to reside in Wilton in January, 1779, and resided there more than a year after that time.

The town of Wilton gave in evidence a warrant directed to William Bayle, Jr. constable for the town of Wilton, dated September 6, 1779, directing him to warn said Bragg to depart from said town of Wilton, and to make due return of said warrant, with his doings thereon, unto the clerk of the Court of the General Sessions of the Peace, to be holden at Amherst the first Tuesday of October, then next ensuing.

This warrant was found returned and properly upon file in the office of the clerk of the court. On the back of it, however, was found two returns by the constable. One of them was imperfect, and was erased. It was signed William *Bayl*, Jr. The other was a full return, dated October 6th, 1779, signed William *Bale*.

There was some doubt as to the authenticity of this return, and much evidence was introduced upon the subject.

The minute of the clerk upon the return was that the return was received the 6th of *September*, 1779.

William Bayle, the constable, testified that his name had been written *Bayl*, *Bale*, and *Bales*, and that his early signature was the first named, and that he thinks he wrote it so as late as 1779, but does not distinctly remember. Also that he usually signed as " Junior " while his father lived, who died subsequent to this time.   That it was his general rule so to sign, but he might have omitted it when acting in a public capacity.   Said Bayle, at the time of giving his testimony, had so far lost his eye-sight as to be unable to testify to his hand writing from an inspection of the returns.   He testified that he returned the warrant, he thinks, with an unobliterated return upon it, in the latter part of September, or first of October, 1779, and that the said Bragg lived at the time of the service of the warrant in a small house on or near the place where Mr. Beede's house has since been built.

The town of Milford offered the testimony of Jonathan Livermore.   He testified that he distinctly recollected the house where Bragg lived in 1779 and '80, and that he did not live, in either of those years, in the house where Beede afterwards resided.

The Court of Common Pleas was holden at Amherst, October 5, 1779, and the Court of Sessions October 7, 1779, of both which courts Robert Fletcher was clerk.

The town of Wilton voted, April 11, 1780, to allow *B.* Bale, Jr. for warning sundry persons out of town and returning warrants, £6 12s.

The court submitted it to the jury to say whether, from all the evidence, they were satisfied that the warrant was returned to the Court of Sessions within the year from the time said Bragg came into town, with directions to find for the defendant, if so satisfied.

Verdict was found for the defendant; and motion was made to set the same aside, on account of misdirection of the court and the admission of improper testimony.

*Livermore,* for the plaintiff.

*C. H. Atherton,* for the defendant.

UPHAM, J., delivered the opinion of the court.

The only question raised in this case is, whether the pauper for whose support this action is brought, was duly warned out of the town of Wilton ; if such was the case, it is conceded that the settlement of the pauper is in Milford.

The warning was under the act of Jan. 16, 1771, and that act provides that the warning shall be returned to the Court of Quarter Sessions within one year from the time such persons came to reside in town. This construction of the act has been sustained by repeated decisions. *Exeter* vs. *Stratham,* 1 *N. H. R.* 102 ; *Northwood* vs. *Durham,* 2 *N. H. R.* 242.

But what shall constitute the proper evidence of such return ? The best evidence is, undoubtedly, a memorandum made by the clerk of the court, of the time when the return was received ; and where such memorandum is made it is conclusive evidence of such time. It has been contended by the plaintiff in this case, that this is the *sole evidence*— that the time of the return should be made a matter of record—and where this is not done, or where the memorandum upon its face is erroneous, as is the case in this instance, that the defect is fatal, and cannot be supplied by other testimony.

But there is nothing in the statute requiring this to be the sole evidence, or even making it the duty of the clerk to cause such memorandum to be made. Where there is no such provision, there would be likely to be a different practice in different counties in this respect ; and it is found that there is no precise uniformity in any one county. Sometimes a memorandum has been made of the year, sometimes of the month, and sometimes of the day of the month, when the warning was received. At other times no minute

has been made, but the papers have been found regularly on file of the proper year.

The statute requires that the time when the pauper commenced his residence within the town should be stated either in the warning or the return ; and according to the construction given to the act the officer is bound, in all cases where such warning was seasonably delivered to him, to make return of such warning within a year from the time when such residence commenced.

Where service of the warning was duly made, the most natural presumption would be that it would be duly returned, and that the officer would thus discharge properly and faithfully his official duty. Where, in addition to this presumption, we find the warning in the clerk's office in a regular file, purporting to contain papers returned within the period required by the statute, this should be regarded, we think, as *prima facie* evidence of a seasonable return, until the contrary appears.

Where there is any thing in the memorandum of the clerk, or such departure from the established practice of a clerk as to render the time of the return doubtful, or rebut the *prima facie* evidence of the return having been seasonably made by the officer, or where there is any other testimony to rebut such presumption, it is evidence to be weighed by the jury.

This case was tried upon these principles. The warning was found duly upon file. The memorandum of the clerk as to the receipt of the warning was not conclusive in any manner, inasmuch as through some clerical error it bore evidence of a receipt of the warning prior to its service, which could not be, and the memorandum might therefore be regarded as void. But the warning being found duly served and properly upon file, it was *prima facie* evidence of a seasonable return.

To rebut this presumption, the plaintiff offered the imperfect memorandum of the clerk, and the different modes of

signature adopted by the officer at different times, to show that the service and return were made at a later period than the time required by the statute. On the other hand, the defendant offered the testimony of the officer, to show a due return made to the clerk's office within the year. On the whole testimony the jury have found a service and return in compliance with the statute, and we think the testimony was competent and properly submitted. There must, therefore, be

*Judgment on the verdict for the defendant.*